**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| GAIL JANUSZEWSKI, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. 22-CV-80656-RS |
| v. | )<br>) |
| NEXA MORTGAGE, LLC, | )<br>) |
| Defendant. | ) |

**DEFENDANT NEXA MORTGAGE, LLC'S MOTION TO DISMISS THE COMPLAINT AND STRIKE THE CLASS ALLEGATIONS WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PROCEDURAL HISTORY AND ALLEGATIONS IN THE COMPLAINT ............................. 2

ARGUMENT ............................................................................................................................. 3

    I. Applicable Legal Standards ................................................................................. 3

        A. On a Motion to Dismiss, the Court Is Not Required to Accept As True Labels, Legal Conclusions, or Formulaic Recitations of the Elements of a Claim ....... 3

        B. Well-Settled Principles of Statutory Interpretation Require the Court to Interpret the FTSA Reasonably and Without Abandoning Common Sense or Logic ................................................................................................................ 4

    II. The Complaint Must Be Dismissed Under Rule 12(b)(6) Because the Elements of an FTSA Claim Are Not Fully Set Forth, and the Allegations Are Nothing More than Conclusory Recitations ..................................................................................... 5

        A. The Complaint Fails to Establish that Plaintiff and the Proposed Class Members Are Consumers Under the FTSA ...................................................... 5

        B. Plaintiff's Conclusory Allegation that NEXA Used an Autodialer Is Not Sufficient to State a Claim .............................................................................. 6

    III. The Complaint Must Be Dismissed Because the FTSA Is Unconstitutional On Its Face and As Applied to NEXA .............................................................................. 8

        A. The FTSA Is Preempted to the Extent It Purports to Regulate Interstate Commerce ........................................................................................................ 9

        B. The FTSA Violates the Dormant Commerce Clause ....................................... 9

        C. The FTSA Violates the First Amendment to the U.S. Constitution ................ 11

    IV. In the Alternative, the Court Should Strike the Class Allegations Because Individual Issues Will Predominate ........................................................................................ 12

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 3, 4, 7, 8

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ................................................................................................................ 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4, 8

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021) ................................................................................................................ 10

*Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*,
  703 F.3d 1230 (11th Cir. 2012) .................................................................................................. 10

*Garcia v. Allstate Ins. Co.*,
  327 So. 2d 784 (Fla. Dist. Ct. App. 1976) .................................................................................... 5

*Glasser v. Hilton Grand Vacations Co., LLC*,
  948 F.3d 1301 (11th Cir. 2020) ................................................................................... 2, 7, 11, 12

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989) .................................................................................................................... 10

*Martinez-Mendoza v. Champion Int'l Corp.*,
  340 F.3d 1200 (11th Cir. 2003) .................................................................................................. 12

*Mills v. Foremost Ins. Co.*,
  511 F.3d 1300 (11th Cir. 2008) .................................................................................................. 12

*NetChoice, LLC v. Att'y Gen. of Fla.*,
  No. 21-12355, 2022 WL 1613291 (11th Cir. May 23, 2022) ..................................................... 11

*Otto v. City of Boca Raton*,
  981 F.3d 854 (11th Cir. 2020) ...................................................................................................... 9

*Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*,
  3 So. 3d 1220 (Fla. 2009) .......................................................................................................... 4, 8

*Teper v. Miller*,
  82 F.3d 989 (11th Cir. 1996) ........................................................................................................ 9

Case 9:22-cv-80656-RS   Document 12   Entered on FLSD Docket 05/25/2022   Page 4 of 17

*Turizo v. Subway Franchisee Advertising Fund Trust, Ltd.*,
  Case No. 21-CV-61493-RAR (S.D. Fla. May 18, 2022) .................................................. 7, 8

## Statutes

28 U.S.C. §§ 1441 and 1446 ........................................................................................................ 3

47 U.S.C. § 227(f)(1) .................................................................................................................. 9

47 U.S.C. §§ 227 ..................................................................................................................... 1, 2

Fla. Stat. § 501.059 ..................................................................................................................... 1

*Fla. Stat.* § 501.059(1)(b) ........................................................................................................... 5

*Fla. Stat.* § 501.059(1)(j) .................................................................................................... 1, 2, 5

*Fla. Stat.* § 501.059(8)(a) .................................................................................................. 3, 4, 6

Fla. Stat. §§ 501.059(1)(e) ......................................................................................................... 9

U.S. Constitution ............................................................................................................ 2, 11, 12

## Rules

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 5

Fed. R. Civ. P. 12(f) ................................................................................................................... 1

Fed. R. Civ. P. 23 ....................................................................................................................... 1

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................................... 12

## Other Authorities

Senate Bill No. 1120 .................................................................................................................. 1

Defendant NEXA Mortgage LLC ("NEXA"), by and through its undersigned counsel, hereby moves, pursuant to Local Rule 7.1 and Federal Rules of Civil Procedure 12(b)(6), 12(f), and 23, to dismiss the complaint in this action (the "Complaint") filed by Gail Januszewski, individually and on behalf of all others similarly situated ("Plaintiff"), for failure to state a claim upon which relief can be granted, and to strike the class allegations, for the reasons set forth in the following memorandum of law.

## **INTRODUCTION**

The Complaint asserts a single claim under a recent amendment to the Florida Telephone Solicitation Act (the "FTSA") that took effect on July 1, 2021.  *See* Fla. Stat. § 501.059, as amended by Florida State Senate Bill No. 1120.  The FTSA addresses unwanted marketing telephone calls and texts[1] to a consumer using an automated system, as the Florida state analogue to the federal Telephone Consumer Protection Act of 1991's, 47 U.S.C. §§ 227, *et seq.* ("TCPA").  The FTSA provision at issue here prohibits the use of an "automated system for the selection or dialing of telephone numbers or the playing of a recorded message when the connection is competed" to send a consumer marketing texts, unless the consumer has consented in writing to receiving such texts.  Plaintiff alleges, based upon a single text message, that NEXA violated the FTSA.

The Court should dismiss the Complaint for failure to state a claim, because Plaintiff has failed to allege that he/she is a "consumer" as defined in the FTSA, and moreover, the Complaint relies on nothing more than repetitive legal conclusions masquerading as facts to satisfy the other elements of an FTSA claim.  That is, Plaintiff conspicuously fails to allege that the telephone

---

[1] The FTSA applies with equal force to telephone calls, text messages, and voicemails.  *See Fla. Stat.* § 501.059(1)(j).  For simplicity and because this case concerns a text message, this motion only refers to text messages.

1

solicitation was to more than just an individual, but rather to a "consumer" ("'Telephonic sales call'" means a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services," *Fla. Stat.* § 501.059(1)(j)). "Consumer," also clearly defined in the statute, is thus a requisite element of the claim, and Plaintiff makes no effort to assert that status. In addition, under Plaintiff's interpretation of the FTSA, any computer program that permits a user to store and dial telephone numbers – functionality present in every smart phone – constitutes an "automated system" under the FTSA. Under well-settled principles of statutory interpretation, the Court should reject Plaintiff's broad and sweeping interpretation of the FTSA. *Cf. Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1309 (11th Cir. 2020) ("In the age of smartphones, it's hard to think of a phone that does not have the capacity to automatically dial telephone numbers stored in a list, giving [TCPA] § 227 an "eye-popping" sweep.").

Dismissing the Complaint for failure to satisfy federal pleading standards is appropriate, but should the Court resolve not to reach these issues, however, the Court should still dismiss the Complaint on the grounds that it is preempted by the TCPA, for violation of the U.S. Constitution's Dormant Commerce Clause, and for violation of NEXA's First Amendment rights.

The Court should also strike the class allegations because it is clear that individual issues predominate in this case, thus precluding certification of a class.

**PROCEDURAL HISTORY AND ALLEGATIONS IN THE COMPLAINT**

On or about March 28, 2022, Plaintiff commenced a putative class action against NEXA in the Circuit Court of the 15th Judicial Circuit In and For Palm Beach County, Florida, captioned *Januszewski, et al. v. NEXA Mortgage, LLC*, Case Number 502022CA002833XXXXMB. NEXA was served with the complaint on April 13, 2022. On

2

April 27, 2022, NEXA timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  On April 29, 2022, NEXA filed an unopposed motion to extend its time to answer or otherwise respond to the Complaint to May 25, 2022, and the Court granted the motion on May 2, 2022.

The Complaint asserts a single claim under the FTSA and alleges that NEXA "engages in telephonic sales calls to consumers without having secured prior express written consent as required by the FTSA."  *See* Compl. ¶¶ 2, 47-54.  Specifically, Plaintiff alleges that, on or about March 15, 2022, NEXA sent Plaintiff one marketing text message that purportedly violates the following provision of the FTSA:

> A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

*Fla. Stat*. § 501.059(8)(a).  Plaintiff alleges that "[s]ince July 1, 2021, *on information and belief*, Defendant sent at least 50 text message solicitations to as many consumers in Florida."  *See* Compl. ¶ 35 (emphasis added).  The Complaint seeks certification of a class defined as "[a]ll persons in Florida and/or Florida residents who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff."  *See id.* ¶ 37.

## ARGUMENT

I. **Applicable Legal Standards**

   A. **On a Motion to Dismiss, the Court Is Not Required to Accept As True Labels, Legal Conclusions, or Formulaic Recitations of the Elements of a Claim**

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S.

3

662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  While Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  As stated by the Supreme Court, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).  Therefore, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 570).  Even though courts are obligated to accept all factual allegations as true when considering a motion to dismiss, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

    **B.**     <u>**Well-Settled Principles of Statutory Interpretation Require the Court to Interpret the FTSA Reasonably and Without Abandoning Common Sense or Logic**</u>

The FTSA does not define many of its terms, including "an automated system for the selection or dialing of telephone numbers." Fla. Stat. § 501.059(8)(a).  Under such circumstances, the Court should interpret the statutory provisions according to their "plain and ordinary meaning." *See Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009) ("Where, as here, the legislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning.") (internal citation and quotation marks omitted).  In interpreting a statute, courts "are not required to abandon either our common sense or principles of logic in statutory interpretation." *Id.* at 1235.  In addition, "a court should be astute in avoiding a construction which may be productive of much litigation and insecurity, or which would throw the meaning or administration of the law, or the forms of

4

business, into hopeless confusion or uncertainty." *Garcia v. Allstate Ins. Co.*, 327 So. 2d 784, 786 (Fla. Dist. Ct. App. 1976) (internal citation and quotation marks omitted).

**II.     The Complaint Must Be Dismissed Under Rule 12(b)(6) Because the Elements of an FTSA Claim Are Not Fully Set Forth, and the Allegations Are Nothing More than Conclusory Recitations**

The Complaint fails to allege a requisite element of the FTSA and, moreover, is replete with legal conclusions masquerading as factual allegations and thus it is woefully deficient in light of *Twombly* and *Iqbal*.

**A.     The Complaint Fails to Establish that Plaintiff and the Proposed Class Members Are Consumers Under the FTSA**

The Complaint should be dismissed because it fails to state a claim upon which relief can be granted in that it neglects to plead facts sufficient to satisfy the FTSA's requirement that the communication be directed to a consumer.

As noted above, the FTSA defines a "telephonic sales call" as "a telephone call, text message, or voicemail transmission *to a consumer* for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." *Fla. Stat*. § 501.059(1)(j) (emphasis added).  "Consumer" is defined to mean more than just an individual, it is "an actual or prospective purchaser, lessee, or recipient of consumer goods or services." *Fla. Stat.* § 501.059(1)(b).  The FTSA provision at issue in this case unequivocally requires that the communication be made to a consumer – the Florida Legislature could have expressed the affected party merely as an individual, but instead used "consumer" as a defined term presumably to distinguish from sales agents and others.

5

The Complaint, however, conspicuously fails to allege that Plaintiff is a consumer. *See* Compl. ¶ 6 ("Plaintiff is, and at all times relevant hereto was, an individual and a 'called party' as defined by [the FTSA] in that he [sic] was the regular user of [sic] cellular telephone number that received Defendant's telephonic sales calls."). Equally problematic is that the proposed class similarly ignores the FTSA's consumer-oriented requirement. Plaintiff seeks certification of a class of "[a]ll persons in Florida and/or Florida residents who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff." Compl. ¶ 37. Plaintiff's proposed class ignores the fact that the FTSA only applies to Florida consumers, not to any and all persons present in or resident of Florida.

### B.   Plaintiff's Conclusory Allegation that NEXA Used an Autodialer Is Not Sufficient to State a Claim

The FTSA provision at issue only applies to telephone calls and texts "if such call involves an automated system for the selection or dialing of telephone numbers." *Fla. Stat*. § 501.059(8)(a). Thus, a required element for a claim under the FTSA is facts sufficient to demonstrate that the defendant made the telephone call at issue "using an automated system for the selection or dialing of telephone numbers."

The Complaint offers nothing more than conclusory statements and formulaic recitations of the elements of an FTSA to prove that NEXA used an autodialer. By way of example, the Complaint repeatedly uses the phrases "automatically" and "with no human involvement" to describe the process by which NEXA purportedly sent Plaintiff a text message:

> "To transmit the above telephonic sales text message call, Defendant utilized a computer software system that automatically selected and dialed Plaintiffs and the Class members' telephone numbers."
>
> "To send the text messages, Defendant used a messaging platform (the 'Platform'), which permitted Defendant to transmit blasts of text messages

>  automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiffs and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform."
>
> "The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant."

Compl. ¶¶ 15, 19, 30. In the context of the FTSA, which only applies to marketing calls made to consumers using an "automated system," whether a particular system was automated can determine whether a defendant has liability under the statute, and thus allegations of an "automated system" must be supported by facts, or they amount to nothing more than the type of "the-defendant-unlawfully-harmed-me accusation" the Supreme Court rejected in *Iqbal*, 556 U.S. at 678.[2] But it is clear from the Complaint that these allegations are nothing more than speculation, as Plaintiff does not identify the "computer software system" or "Platform" allegedly used by NEXA. Similarly, while Plaintiff repeatedly alleges that NEXA sends communications "with no human involvement," the Complaint elsewhere acknowledges that a human being must "initiate[]" communications. Compl. ¶ 19. The Complaint also refers to telephone numbers being stored in the "Platform," but does not address the fact that a human was required to store those telephone numbers. As the Eleventh Circuit explained in an analogous context, the involvement of a human in placing a call "cannot be squared with the accepted assumption that auto-dialers must *automatically* dial the numbers." *Glasser*, 948 F.3d at 1312.

---

[2] In a recent order, a judge of this Court addressed the autodialer requirement under the FTSA generally but did not address what facts are sufficient to state such a claim, because the defendant had not raised such an argument. *See* Order Denying Defendant's Motion to Dismiss (Docket No. 43), *Turizo v. Subway Franchisee Advertising Fund Trust, Ltd.*, Case No. 21-CV-61493-RAR (S.D. Fla. May 18, 2022), at p. 9 ("Instead of contesting the sufficiency of Plaintiff's factual allegations, Defendant lodges a multitude of legal challenges against the FTSA's autodialer provision.").

Plaintiff's allegations that NEXA used an autodialer are also implausible. For example, the Complaint appears to suggest that one characteristic of an autodialer is that they transmit communications from a ten-digit telephone number:

> "The number used by or on behalf of Defendant is known as a 'long code,' a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual."
>
> "The impersonal and generic nature of Defendant's text message and the fact that it originated from a long-code demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiffs and the Class members' telephone numbers."

Compl. ¶¶ 16, 18. Plaintiff's suggestion that a ten-digit telephone number is an indicator of an autodialer is preposterous, because all U.S. telephone numbers are ten digits. Under Plaintiff's interpretation of the FTSA, every single telephone in the U.S. is transformed into an autodialer. This interpretation defies logic and common sense and should be roundly rejected. Cf. *Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1235 (Fla. 2009) ("We are not required to abandon either our common sense or principles of logic in statutory interpretation."). It certainly is not a "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)).

### III. The Complaint Must Be Dismissed Because the FTSA Is Unconstitutional On Its Face and As Applied to NEXA[3]

Under what is known as the constitutional avoidance doctrine, federal courts should "avoid reaching constitutional questions if there are other grounds upon which a case can be

---

[3] While a judge of this Court upheld the FTSA against constitutional challenges in the *Turizo* case referenced in footnote 2 above, that decision is, of course, not binding on this Court, and NEXA respectfully submits that the case was wrongly decided.

8

decided." *Otto v. City of Boca Raton*, 981 F.3d 854, 871 (11th Cir. 2020) (internal citation and quotation marks omitted). For the reasons explained in the prior section, the Complaint should be dismissed for failure to state a claim upon which relief should be granted, a result which would avoid having to reach NEXA's constitutional arguments. Should the Court find that Plaintiff has adequately met her pleading burden, however, the Court should dismiss the Complaint on the ground that it is unconstitutional on its face and as applied to NEXA.

### A. The FTSA Is Preempted to the Extent It Purports to Regulate Interstate Commerce

The FCPA preempts State laws that impose more restrictive requirements than the FCPA on interstate telemarketing communications. *See* 47 U.S.C. § 227(f)(1). The FTSA purports to apply to any person who makes a telephone call to a Florida area code, regardless of whether either of the parties is actually located in Florida. *See* Fla. Stat. §§ 501.059(1)(e) ("'Doing business in this state' means businesses that conduct telephonic sales calls from a location in Florida *or from other states or nations* to consumers located in Florida) (emphasis added), 501.059(8)(d) ("There is a rebuttable presumption that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call."). Thus, a violation of the FTSA could occur where a company based in Arizona sends a marketing text to an Arizona resident who coincidentally happens to have a Florida area code, despite any relationship to Florida. The FCPA squarely preempts state laws that regulate interstate telemarketing communications, as the FTSA does. In such circumstances, the "state law must give way" to the conflicting federal law. *See Teper v. Miller*, 82 F.3d 989, 993 (11th Cir. 1996).

### B. The FTSA Violates the Dormant Commerce Clause

The Eleventh Circuit has explained the dormant commerce clause as follows:

9

> The Commerce Clause grants to Congress the power to regulate interstate and foreign commerce. [T]his affirmative grant of authority to Congress also encompasses an implicit or dormant limitation on the authority of the States to enact legislation affecting interstate commerce. This negative command prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear.

*Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (internal citations and quotation marks omitted). A state law can violate the dormant commerce clause in one of two ways: by discriminating against interstate commerce, or by unduly burdening interstate commerce. *See id.* at 1244. The FTSA violates both.

First, the FTSA discriminates against interstate commerce by directly controlling commerce outside the state of Florida. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989) ("[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature. The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State.") (internal citation and quotation marks omitted). As noted above, the FTSA purports to apply to any person who makes a telephone call to a Florida area code, regardless of whether either of the parties is actually located in Florida.

Second, the FTSA unquestionably imposes an undue burden on interstate commerce, by subjecting marketing telephone calls to inconsistent regulations. The Supreme Court has held that the TCPA autodialer provision did not apply to computer systems that dial telephone numbers that had been stored in a database. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170, 1171 (2021) ("In sum, Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."). Under Plaintiff's exceptionally broad interpretation of an

10

autodialer, any telephone that is capable of storing a number and then dialing it – a definition which would encompass every smart phone – would be deemed an autodialer. Businesses such as NEXA would be required to purchase telephone equipment that lacks any type of automated functionality. Any benefit to Florida from such a provision is far outweighed by the burden on interstate commerce.

**C.** **The FTSA Violates the First Amendment to the U.S. Constitution**

The Court should dismiss the Complaint because the FTSA violates the First Amendment to the U.S. Constitution. The FTSA is a content-based restriction on speech because it applies only to marketing or sales calls. *Cf. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (holding that a provision under the TCPA regarding government debt was a content-based restriction on speech). As the Eleventh Circuit explained in a recent decision preliminarily enjoining enforcement of certain provisions of a different Florida law on First Amendment grounds:

> [A] content-neutral regulation of expressive conduct is subject to intermediate scrutiny, while a regulation based on the content of the expression must withstand the additional rigors of strict scrutiny. A law is content-based if it suppress[es], disadvantage[s], or impose[s] differential burdens upon speech because of its content, i.e., if it applies to particular speech because of the topic discussed or the idea or message expressed. A law can be content-based either because it draws facial distinctions ... defining regulated speech by particular subject matter or because, though facially neutral, it cannot be justified without reference to the content of the regulated speech.

*NetChoice, LLC v. Att'y Gen. of Fla.*, No. 21-12355, 2022 WL 1613291, at *18 (11th Cir. May 23, 2022) (internal citations and quotation marks omitted). Yet that is precisely what the FTSA does here.

A content-based restriction on speech is subject to strict scrutiny, *see id.*, and the FTSA cannot withstand this exacting form of review. Indeed, in *Glasser v. Hilton Grand Vacations*

*Co., LLC*, the Eleventh Circuit suggested that the TCPA would violate the First Amendment of the U.S. Constitution if it were interpreted to apply to calls made using standard smart phones. 948 F.3d 1301, 1310 (11th Cir. 2020) ("Would the First Amendment really allow Congress to punish every unsolicited call to a cell phone? That is a G [sic] too far."). Here, Plaintiff advances an interpretation of a Florida law that would sweep within its scope nearly all smart phones, a result the First Amendment prohibits.

### IV. In the Alternative, the Court Should Strike the Class Allegations Because Individual Issues Will Predominate

Federal Rule of Civil Procedure 23(c)(1)(A) requires the court to determine whether to certify a class action "[a]t an early practicable time after a person sues." While challenges to class certification are more typically raised following discovery, the Eleventh Circuit has held that "[i]n some instances, the propriety vel non of class certification can be gleaned from the face of the pleadings." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). This is such a case.

As noted above, Plaintiff seeks to sweep within the proposed class any person who received a communication from NEXA, without regard to whether a) the telephone call was solicited by the consumer, and/or b) directed at a consumer. The definition of the proposed class would thus improperly include communications that were in fact solicited by a class member, and those NEXA communications made to non-consumers (i.e., businesses). Thus, each proposed class member's relationship with NEXA would need to be evaluated, making class certification impossible. Under the circumstances, it is appropriate for the Court to strike the class allegations, even at the pleading stage. *See, e.g., Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215 (11th Cir. 2003).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice and/or should strike the class allegations.

Dated:   May 25, 2022
        Miami, Florida

*/s/ Traci H. Rollins*
ARON U. RASKAS, ESQ.
Florida Bar No. 1022416
Primary: araskas@gunster.com
Secondary: avalido@gunster.com
Secondary: eservice@gunster.com
TRACI H. ROLLINS, ESQ.
Florida Bar No. 769071
Primary:  trollins@gunster.com
Secondary:  crossodivita@gunster.com
Secondary: eservice@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
600 Brickell Avenue, Suite 3500 East
Miami, Florida  33131
Phone: (305) 376-6000
Fax: (305) 376-6010

Ari Karen (admitted *pro hac vice*)
Christopher L. McCall (admitted *pro hac vice*)
MITCHELL SANDLER LLC
1120 20th Street N.W., Suite 725
Washington, D.C.  20036
Telephone:  (202) 886-5260
Email:  akaren@mitchellsandler.com
cmccall@mitchellsandler.com
*Attorneys for Defendant NEXA Mortgage LLC*

ACTIVE:15461923.2